AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Translator Electronic Device (DHS00000000423611)<br>Seizure 202306243 Line Item 012<br>("Target Device 12") | )<br>)<br>)<br>)<br>)<br>) Case No. '23  MJ2199 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A-12, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-12, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

❑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 2243/2244, 18 USC 242/250 | Sexual abuse of a ward or an individual in Federal custody,Abusive sexual contact,Deprivation of rights under color of law and Penalties for civil rights offenses involving sexual misconduct |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

❑ Continued on the attached sheet.

❑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Teresa Cardona*
*Applicant's signature*

DHS ICE OPR Special Agent Teresa Cardona
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: _____ June 17, 2023 _____

*Judge's signature*

City and state:  San Diego, California

Hon. David D. Leshner, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A-12

## PROPERTY TO BE SEARCHED

The following property is to be searched:

> Translator Electronic Device (DHS00000000423611)
> Seizure 202306243 Line Item 012
> ("Target Device 12")

The Target Device is currently in the possession of the DHS, Immigration and Customs Enforcement (ICE), Office of Professional Responsibility (OPR) located at 550 W. C Street, Suite 560, San Diego, CA 92101.

**ATTACHMENT B-12**

**ITEMS TO BE SEIZED**

Authorization to search the translator electronic device described in Attachment A-12 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the translator electronic device for evidence described below.  The seizure and search of the translator electronic device shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the translator electronic device will be electronic records, communications, and data such messages, photographs, audio files, and videos for the period of January 1, 2023, up to and including June 13, 2023:

(1)   tending to identify efforts to contact and communicate with the detainee in custody;

(2)   tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate efforts to pursue and continue the sexual abuse of a ward, abusive sexual contact, and/or use of HERNANDEZ's use of her official authority to commit these offenses.

(3)   tending to identify concealment and destruction of evidence related to the sexual abuse of a ward, abusive sexual contact, and/or use of HERNANDEZ's use of her official authority to commit these offenses.;

(4)   tending to identify travel to or presence at locations involved in the custodial visits of the detainees;

(5)   tending to identify the user of, or persons with control over or access to, the digital devices; and/or

(6)     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above. It is also my opinion and belief that the above-described documents are currently possessed by a government employee much the same way a legitimate case manager will collect and maintain records for purposes of assisting a detainee in their grievances and custodial interviews.

All of the above constituting evidence of a violation of Title 18, United States Code, Sections 2243 and 2244, Title 18, United States Code, Sections 242 and Title 18, United States Code, Section 250.

**AFFIDAVIT IN SUPPORT OF**

**APPLICATION FOR SEARCH WARRANT**

I, Teresa Cardona, being duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1.      This affidavit is in support of an application by the United States of America for a search warrant to search the following electronic device(s):

Apple Blue Cellular iPhone
Seizure 202306243 Line Item-001
("Target Device 1")

Apple Cellular iPhone (DHSWP22008652)
Seizure 202306243 Line Item-002
("Target Device 2")

Samsung Galaxy Phone Note 8
Seizure 202306243 Line Item-003
("Target Device 3")

Apple iPad
Seizure 202306243 Line Item-004
("Target Device 4")

Samsung Tablet
Seizure 202306243 Line Item-005
("Target Device 5")

Silver Lenovo Laptop
Seizure 202306243 Line Item-006
("Target Device 6")

HP Silver Laptop (DHSFY21003463)
Seizure 202306243 Line Item 007
("Target Device 7")

Gateway Laptop
Seizure 202306243 Line Item 008
("Target Device 8")

HP Pavilion Tower
Seizure 202306243 Line Item 009
("Target Device 9")

SIM Card
Seizure 202306243 Line Item 010
("Target Device 10")

SANDISK Memory Card
Seizure 202306243 Line Item 011
("Target Device 11")

Translator Electronic Device (DHS00000000423611)
Seizure 202306243 Line Item 012
("Target Device 12")

SANDISK USB Thumb Drive
Seizure 202306243 Line Item 013a
("Target Device 13a")

Blue USB Thumb Drive (ICE)
Seizure 202306243 Line Item 013b
("Target Device 13b")

White USB Thumb Drive PQi
Seizure 202306243 Line Item 014a
("Target Device 14a")

Black USB Thumb Drive GE
Seizure 202306243 Line Item 014b
("Target Device 14b")

White Lexar USB Thumb Drive
Seizure 202306243 Line Item 014c
("Target Device 14c")

Silver/Black Level 3 USB Thumb Drive
Seizure 202306243 Line Item 015
("Target Device 15")

AT&T Netgear Electronic Device
Seizure 202306243 Line Item 016
("Target Device 16")

collectively, the **Target Devices,** as further described in each corresponding Attachment A, and to seize evidence of crimes, specifically violations of Title 18, United States Code, Sections 2243 (Sexual Abuse of a Ward), 2244 (Abusive Sexual Contact), and Title 18, United States Code, Sections 242 and 250 (Deprivation of Rights Under Color of Law) (collectively, the **Target Offenses**) as further described in each corresponding Attachment B. The requested warrant relates to the investigation of former Department of Homeland Security (DHS), Immigration and Detention Case Manager (IDCM) Shantal HERNANDEZ, a DHS contractor with the Office of the Immigration and Detention Ombudsman (OIDO).  The **Target Devices** are currently in the custody of the DHS, Immigration and Customs Enforcement (ICE), Office of Professional Responsibility (OPR) located at 550 W. C Street, Suite 560, San Diego, CA 92101.

2.      The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; my review of documents and computer records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I or others have learned during this investigation. Moreover, dates and times are approximate.

## EXPERIENCE & TRAINING

3.      I am a Special Agent (SA) with DHS ICE OPR and have been so employed for approximately twenty-one (21) years.  I am currently assigned to OPR in the San Diego, where I primarily investigate crimes concerning employee corruption, bribery,

false impersonation of federal officers, excessive use of force, violations of civil liberties and various forms of egregious employee misconduct.  I am a graduate of the Federal Law Enforcement Training Center ("FLETC") Criminal Investigator Training Program ("CITP"), Customs Basic Enforcement School ("CBES") and the Immigration and Customs Enforcement Special Agent Training ("ICESAT") course.

4.     Throughout my tenure as a Special Agent, I have primarily investigated a variety of importation crimes involving Transnational Criminal Organizations (TCO). I have also investigated and participated in dozens of narcotics smuggling investigations before my assignment to OPR.  While conducting these and other investigations, I have been the Supervisory Special Agent to a group of special agents conducting numerous search and seizure warrants resulting in the seizure of narcotics, ill-gotten proceeds and other assets including vehicles and real property.

5.     My experience as an OPR Agent has included the investigation of cases involving the use of computers and the Internet to commit crimes. I have received training and gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer crimes, computer evidence identification, computer evidence seizure and processing, and various other criminal laws and procedures. I have personally participated in the execution of search warrants involving the search and seizure of computer equipment. I have investigated violations of civil rights, firearms trafficking, illicit narcotics, controlled substances, and other crimes that have resulted in arrests, indictments, and convictions.

6.     Furthermore, during my assignment as an OPR agent I have investigated multiple cases involving violations of the Federal Register Part II, Department of Homeland Security, 6 CFR Part 115, Standards to Prevent, Detect, and Respond to Sexual Abuse and Assault in Confinement Facilities and the Prison Rape Elimination Act (PREA). I have investigated PREA violations involving sexual assaults of ICE

detainees by U.S. Government employees, contract employees and/or other ICE detainees. I have assisted in several victim-based interviews in the Spanish and English language and have gained a vast understanding of the victimization of wards or detainees in Federal custody. I have received specialized training in PREA and have participated in my agency required training in the areas of sexual assault interviews, reporting requirements and victim assistance.

7.      I am familiar with the facts and circumstances set forth in this affidavit because of my own personal observations, my training and experience, examination of relevant documents, interviews with persons named in this document, and information provided to me by other law enforcement officers. Based upon my own observations, and the observations of other law enforcement officers involved in this investigation, this affidavit is made in support of an application for a search warrant to search the following device(s) in connection with an investigation into violations of the **Target Offenses**.

8.      Based on the information below, I have probable cause to believe that the requested search and seizure will lead to evidence regarding violations of the **Target Offenses**. Specifically, there is probable cause that HERNANDEZ and Nadhim exchanged messages regarding their improper relationship and took videos and/or photographs of their encounters that are evidence of the **Target Offenses**, and such messages and photos/videos are likely to be stored on the **Target Devices**.

### FACTS IN SUPPORT OF PROBABLE CAUSE

*Investigation Overview*

9.      This investigation targets Shantal HERNANDEZ, a former DHS contractor with OIDO who has been identified as using her case manager position to gain unfettered access to ICE detention facilities to engage in sexual contact with a ward in ICE federal custody at the Otay Mesa Detention Center (OMDC). HERNANDEZ

has communicated over the phone and internet-based messaging with detainee Ihab Kifah Nadhim (Nadhim), an Iraqi national detained at OMDC awaiting deportation.

10.     OIDO is an oversight office established by Congress (Section 106 of the Consolidated Appropriations Act, 2020, Public Law 116-93). The OIDO office will assist individuals with complaints about the potential violation of immigration detention standards or misconduct by DHS (or contract) personnel. HERNANDEZ's IDCM position required her to conduct frequent site visits at immigration detention facilities and identify, analyze, and seek to resolve complaints related to the conditions of immigration detention. HERNANDEZ held a position that allowed her to telework from her residence and was issued government property, a cell phone, laptop, printer, Personal Identity Verification (PIV) Card, an access card to OMDC and an electronic devise to grant internet access from her residence or other locations.

11.     On March 10, 2023, ICE Enforcement and Removal Office (ERO) San Diego reported a suspicious relationship between HERNANDEZ and detainee Nadhim at OMDC, such as preferential treatment and requesting to be present at Nadhim's disciplinary hearing for possession of contraband (i.e., women's' underwear, unidentifiable medication) introduced from outside the facility. I requested the OMDC key access entry and exit logs for HERNANDEZ and video footage available for the dates and times of her visits to OMDC. A review of the logs showed HERNANDEZ visited OMDC for periods of time ranging from 3 to 7 hours per visit.  The video showed various incidents where HERNANDEZ spent hours in the M Unit where Nadhim was assigned.  The video includes footage of HERNANDEZ standing near the cell doors for a long period of time visiting Nadhim when he was assigned solitary confinement.  I later learned from OMDC CoreCivic Officer Arturo Torres that there are specific areas in the facility such as the law library where no video footage is available, and that HERNANDEZ had on several occasions met with Nadhim in the law library which was

enclosed with a private unmonitored area. A review of the records showed that HERNANDEZ began her employment at the facility in or about January 2023.

12.    I was able to find through query audit trails on the ICE Enforce Alien Removal Module (EARM) that HERNANDEZ had a history of querying Nadhim regarding the status of his immigration case and deportation proceeding.  As part of her duties as a case manager HERNANDEZ queried on Official Government Computer Systems, checking all aspects of Nadhim's immigration case ranging from his initial encounters with ICE and his immigration court proceedings to include the EARM case notes entered by ICE deportation officers related to Nadhim's deportation proceedings. Furthermore, HERNANDEZ's queries in EARM reflected that she queried Nadhim the most compared to all other detainees.

13.    On March 28, 2023, ICE ERO Assistant Field Office Director (AFOD) Amy Kraus reported to OPR that she received information from OMDC CoreCivic Warden Christopher LaRose regarding communication between ICE detainee Nadhim and phone number 619-302-1808. I requested the release of all the phone calls and communication between detainee Nadhim and phone number 619-302-1808.  All phone calls to and from the facility placed by ICE detainees have a verbal admonishment that the calls are subject to recording and monitoring and directly after the statement ask to accept or decline the call.

14.    I reviewed Nadhim's OMDC telephone communications and identified 54 calls to phone number 619-302-1808. I then subpoenaed the subscriber information for this number. On May 19, 2023, I received information from AT&T stating the phone number belongs to HERNANDEZ with the corresponding address of 3972 Ocean View Boulevard, San Diego, California.   The OMDC-recorded calls from Nadhim to HERNANDEZ revealed an ongoing sexual relationship.

15.    On February 26, 2023, a 17-minute OMDC recorded phone call took place between Nadhim to HERNANDEZ at 619-302-1808 and was sexual in nature.  Detainee

Nadhim and HERNANDEZ discuss having children together and the prospects of creating pornographic video content upon his release from detention. During the phone call, HERNANDEZ is heard reflecting on having seen Nadhim's genitals. Nadhim replies per his recollection, he had intercourse with HERNANDEZ on at least 13 occasions.

16.     On March 5, 2023, in a call to 619-302-1808, Nadhim says he has been thinking about being a father and states, "another one for the team…another baby." During a subsequent phone call with Nadhim, HERNANDEZ took a pregnancy test while he is on the line and tells him the results only show one line and that it is still early.

17.     On March 27, 2023, HERNANDEZ and Nadhim stopped communicating telephonically using number 619-302-1808, however they continued to communicate over an internet-based messaging system through an electronic tablet provided to ICE detainees at the OMDC facility. HERNANDEZ utilized an account identified as "Vanessa JV" with a corresponding IP address of 68.72.212.175. I further requested through a subpoena the subscriber information for this IP address.

18.     On March 29, 2023, the user of "Vanessa JV" sent messages to detainee Nadhim of an explicit sexual nature, to include a message advising him she is watching a video recording of when she gave him oral sex.

19.     On April 6, 2023, HERNANDEZ told Nadhim that she was at a doctor's appointment and about to see their "gift." Nadhim, in referring to the sex of the baby, asked that she let him know and not keep it from him. HERNANDEZ that Nadhim that she would record it and will provide the video to his mother, who was scheduled to visit Nadhim at OMDC the following Saturday. I requested the OMDC visitor logs for Nadhim and confirmed his mother visited Nadhim on Saturday, April 8, 2023.

20.     On April 10, 2023, after the review of all audio calls from detainee Nadhim to HERNANDEZ at 619-302-1808, I was made aware a PREA violation had occurred

and subsequently was able to confirm that phone number 619-302-1808 belonged to HERNANDEZ. I notified the OMDC CoreCivic Warden Christopher LaRose of the investigative findings, and he requested his CoreCivic investigator Charles Cross initiate a PREA investigation where Nadhim was interviewed and asked if he has been subjected to sexual abuse at the OMDC facility. Nadhim denied being a victim of sexual abuse and denied all victim services. Additionally, on April 11, 2023, OPR agents interviewed Nadhim at the OMDC facility regarding his ongoing sexual relationship with HERNANDEZ and he denied the existence of a sexual relationship. The CoreCivic investigator blocked the phone number and account associated to HERNANDEZ. On April 30, 2023, HERNANDEZ's contract with OIDO was terminated by her contracting company.

21.    HERNANDEZ has continued to try contacting Nadhim and has attempted to circumvent the procedures put in place to prevent the further victimization of Nadhim. On May 1, 2023, OPR learned from OMDC CoreCivic Officer Torres that HERNANDEZ opened another account under a different phone number of 858-413-7014 which is associated to the "Vanessa JV" account. I further requested through a subpoena the subscriber information and received confirmation on May 11, 2023, this phone number belongs to HERNANDEZ.

22.    Through the audio calls and electronic messaging, HERNANDEZ told Nadhim that she had captured video and electronically stored data of their sexual encounters and proof of an alleged pregnancy.  Furthermore, HERNANDEZ was allowed to bring electronic devices into the facility that are otherwise prohibited to the public, I further believe she was able to capture video of her sexual encounters with Nadhim in the OMDC facility.

23.    Based on my training and experience HERNANDEZ was placed in a position of public trust and utilized her employment and access to the detainee to groom and manipulate Nadhim.  Through the review of phone calls, I was able to establish a

pattern of dependency on the part of Nadhim soliciting HERNANDEZ' assistance in his release from custody. Through phone calls and messaging communication HERNANDEZ exercised a form of control over Nadhim by encouraging him and instructing him how to avoid deportation.

24.    On June 13, 2023, I served federal search warrant 23MJ2094 for HERNANDEZ's residence located at 3972 Ocean View Boulevard, San Diego, California and federal search warrant 23MJ2090 for HERNANDEZ's vehicle. Two (2) cellular phones, two (2) electronic tablets, two (2) laptops, one (1) computer tower, six (6) Universal Serial Bus (USB) thumb drives, one (1) Subscriber Identity Module (SIM) card, and one (1) memory card were seized from the residence. Additionally, the following DHS government owned and issued electronic devices were seized; one (1) iPhone cellular phone, one (1) HP laptop, one (1) translator electronic device, and one (1) AT&T Netgear electronic device. All of these items, in aggregate, are the **Target Devices**. No electronic devices were seized from HERNANDEZ' vehicle.

25.    Regarding Target Device 12, the translator device is a government issued Vormor Language Translator with a digital camera and electronic storage capable of maintaining photographs, recordings, and notes.

26.    Regarding Target Device 16, the AT&T electronic device is a government issued hotspot which will possess its own IP address and has internal storage. It is expected to contain logs of all devices that were connected to it.

## SEARCH METHODOLOGY

### *Scope of Items to Be Searched*

27.    Based upon my training and experience, consultation with other law enforcement officers experienced in sexual abuse of wards or detainees in custody investigations, and all the facts and opinions set forth in this affidavit, I believe probable cause exists that the **Target Devices** are being used to further the communication and victimization activities by HERNANDEZ.

In addition, I know that:

      a.    Individuals involved in abuse of a ward will commonly have electronically stored data of their sexual encounters on hand, secreted in their premises stored in electronic devices.

      b.    Individuals involved in government case work often maintain records of their interactions with detainees in facilities to include cases were documentation of detainee complaints and other records of evidentiary value for months or years at a time. It is common, for example, for case managers to keep print outs of sensitive government reports of detainee's immigration cases. Such records are often maintained for a substantial period for inclusion in a physical case file. I have found in my training and experience that such records are invaluable to the case management process and that such records are not discarded due to DHS policy of records management and retention.

      c.    Individuals participating in U.S. Government telework from their residence often maintain cellular telephones at their residence, government issued laptops, printers and an official Personal Identity Verification Card granting access to secure government facilities and government computer systems. Further, it has been my experience that those involved in abuse of a ward in Federal custody maintain contact information for their victims in their cellular telephones. In particular, there is probable cause to believe that the following may be found stored in the cellular telephones: electronic records, communications, and data including, but not limited to emails, text messages, photographs, audio files, videos, and location data, on digital devices:

      (1)    tending to identify efforts to contact and communicate with the detainee in custody;

      (2)    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate

efforts to pursue and continue the sexual abuse of a ward, abusive sexual contact, and/or use of HERNANDEZ's use of her official authority to commit these offenses.

(3)     tending to identify concealment and destruction of evidence related to the sexual abuse of a ward, abusive sexual contact, and/or use of HERNANDEZ's use of her official authority to commit these offenses.;

(4)     tending to identify travel to or presence at locations involved in the custodial visits of the detainees;

(5)     tending to identify the user of, or persons with control over or access to, the digital devices; and/or

(6)     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above. It is also my opinion and belief that the above-described documents are currently possessed by a government employee much the same way a legitimate case manager will collect and maintain records for purposes of assisting a detainee in their grievances and custodial interviews.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION AS TO COMPUTERS AND OTHER ELECTRONIC STORAGE DEVICES

28.     With the approval of the Court in signing this warrant, agents executing this search warrant will employ the following procedures regarding computers and other electronic storage devices, including electronic storage media, which may contain data subject to seizure pursuant to this warrant:

### Identification And Extraction Of Relevant Data

d.     A forensic image is an exact physical copy of the hard drive or other media. After obtaining a forensic image, the data will be analyzed to identify and extract data subject to seizure pursuant to this warrant. Analysis of the data following the creation of the forensic image can be a highly technical process requiring specific

expertise, equipment, and software. There are literally thousands of different hardware items and software programs, and different versions of the same program, that can be commercially purchased, installed, and custom-configured on a user's computer system. Computers are easily customized by their users. Even apparently identical computers in an office environment can be significantly different with respect to configuration, including permissions and access rights, passwords, data storage, and security. It is not unusual for a computer forensic examiner to have to obtain specialized hardware or software, and train with it, in order to view and analyze imaged data.

      e.     Analyzing the contents of a computer or other electronic storage device, even without significant technical issues, can be very challenging. Searching by keywords, for example, often yields many thousands of hits, each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant hit does not end the review process. The computer may have stored information about the data at issue: who created it, when and how it was created, downloaded, or copied, when it was last accessed, when it was last modified, when it was last printed, and when it was deleted. Sometimes it is possible to recover and entire document that was never saved to the hard drive if the document was printed. Moreover, certain file formats do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database, and spreadsheet applications do not store data searchable text. The data is saved in a proprietary non-text format. Documents printed by the computer, even if the document was never saved to the hard drive, are recoverable by forensic programs but not discoverable by keyword searches because the printed document is stored by the computer as a graphic image and not as text. Similarly, faxes sent to the computer are stored as graphic images and not as text. In addition, a particular relevant piece of data does not exist in a vacuum. To determine who created, modified, copied, downloaded, transferred, communicated about, deleted, or printed the data requires a search of other events that occurred on the

computer in the time periods surrounding activity regarding the relevant data. Information about which user had logged in, whether users share passwords, whether the computer was connected to other computer or networks, and whether the user accessed or used other programs or services in the time period surrounding events with the relevant data can help determine who was sitting as the keyboard.

   f. It is often difficult or impossible to determine the identity of the person using the computer when incriminating data has been created, modified, accessed, deleted, printed, copied, uploaded, or downloaded solely by reviewing the incriminating data. Computers generate substantial information about data and about users which generally is not visible to users. Computer-generated data, including registry information, computer logs, user profiles and passwords, web-browsing history, cookies, and application and operating system metadata, often provides evidence of who was using the computer at a relevant time. In addition, evidence such as electronic mail, chat sessions, photographs and videos, calendars, and address books stored on the computer may identify the user at a particular, relevant time. The manner in which the user has structured and named files, run or accessed particular applications, and created or accessed other, non-incriminating files or documents, may serve to identify a particular user. For example, if an incriminating document is found on the computer but attribution is an issue, other documents or files created around that same time may provide circumstantial evidence of the identity of the user that created the incriminating document.

   g. Analyzing data has become increasingly time-consuming as the volume of data stored on a typical computer system and available storage devices has been mind-boggling. For example, as single megabyte of storage space is roughly equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is roughly equivalent of 500,000 double-spaced paged of text. Computer hard drives are now being sold for personal computers capable of storing up

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

to 2 terabytes (2,000 gigabytes) of data. And this data may be stored in a variety of formats or encrypted (several new commercially available operating systems provide for automatic encryption of data upon shutdown of the computer). The sheer volume of data also has extended the time that it takes to analyze data. Running keyword searches takes longer and results in more hits that must be individually examined for relevance. And, once reviewed, relevant data leads to new keywords and new avenues for identifying data subject to seizure pursuant to the warrant.

       h.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including the use of hashing tools to identify evidence subject to seizure pursuant to this warrant, and to exclude certain data from analysis, such as known operating system and application files. The identification and extraction process may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within one-hundred and twenty (120) days from the data of seizure pursuant to this warrant, absent further application to this Court.

       i.    All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION AS TO ANY CELLULAR TELEPHONE

    29.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be minicomputers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers

now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

30.     Following the issuance of this warrant, law enforcement personnel will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

31.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 120 days, absent further application to this court.

## GENUINE RISK OF DESTRUCTION OF DATA

32.     Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case,

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

## CONCLUSION

33.    Based on all of the above, my experience and training, a review of documents and other relevant information I believe to be reliable, and discussions with other law enforcement officers, it is my opinion that the items listed in Attachment B are fruits, instrumentalities or evidence of a violation of the following enumerated offenses: Specifically, violations of the **Target Offenses**.  It is also my opinion that there is probable cause to believe that the items set forth in each corresponding Attachment B are present in the **Target Devices**, as more fully described in each corresponding Attachment A,

Dated: June  16 , 2023

*Teresa Cardona*
_____
Teresa Cardona
Special Agent
Office of Professional Responsibility
Department of Homeland Security

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 17th day of June 2023.

_____
HON. DAVID LESHNER
U.S. MAGISTRATE JUDGE

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT